# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 1, 2005 Session

## STATE OF TENNESSEE v. ROSE MARY ADAMS

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR3-2004      William B. Acree, Jr., Judge**

---

**No. W2004-01650-CCA-R3-CD  - Filed May 2, 2005**

---

After the trial court denied her motion to suppress, the defendant, Rose Mary Adams, entered a best interest guilty plea to possession with intent to deliver a Schedule II controlled substance, methamphetamine, a Class C felony, and to possession of drug paraphernalia, a Class A misdemeanor.  After conducting a sentencing hearing, the trial court sentenced the defendant to four years in the Community Correction program after four months of service in the county jail and fined the defendant $2,000 for the possession with intent to sell conviction.  For the possession of drug paraphernalia conviction, the defendant received a concurrent sentence of eleven months and twenty-nine days with all but four months suspended.  The defendant now appeals a certified question of law challenging the trial court's denial of her motion to suppress the evidence.  We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and James Curwood Witt, Jr., JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Rose Mary Adams.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At approximately 5:00 a.m. on October 16, 2003, Deputy Steve Todd of the Weakley County Sheriff's Department responded to a 911 call involving an automobile accident.  When he arrived at the scene, Deputy Todd saw the defendant's vehicle overturned in a ditch and noticed the defendant inside.  Deputy Todd then opened the rear door of the vehicle, allowing the defendant to climb out.

Once the defendant was outside the vehicle, Deputy Todd noticed that she appeared intoxicated. Deputy Todd then proceeded to conduct a field sobriety test, which revealed that the defendant's pupils were constricted. He also questioned her as to what happened and asked, "[I]s there anything you want to tell me, Rosemary?"

Before Deputy Todd conducted any further sobriety tests, he accompanied the defendant to an ambulance, which had arrived at the scene. After the defendant signed a medical release and told paramedics that she was fine, Deputy Todd resumed field sobriety testing. He asked the defendant to do the "one-leg stand" and the "walk-and-turn." At the completion of these tests, Deputy Todd stated, "[Y]ou didn't do very well, Rosemary. . . . Is there anything else you want to tell me?" The defendant then pulled a contact lens case from her pants pocket and gave it to Deputy Todd, stating, "[w]ell that's what I had."

Before opening the case, Deputy Todd placed the defendant under arrest for D.U.I. He then shined a flashlight into her vehicle, revealing a discolored vial "believed to be used in the . . . smoking of . . . methamphetamine." Deputy Todd found methamphetamine in the contact lens case and twenty-five bags of methamphetamine and $300 in cash in the defendant's purse.

After being indicted for possession with intent to deliver methamphetamine, possession of drug paraphernalia, and driving under the influence, the defendant filed a motion to suppress the evidence. At the hearing on the motion, Deputy Todd testified that, upon his arrival at the accident scene, the defendant "appeared . . . under the influence of an intoxicant or drug." He stated that she voluntarily gave him the contact lens case and that the search of her purse, contact lense case, and vehicle occurred after he placed her under arrest for D.U.I. The defendant admitted that she gave Deputy Todd the contact lens case but denied giving her consent to search. The trial court denied the defendant's motion, stating:

> The testimony is undisputed that [the defendant] gave Officer Todd the container which contained methamphetamine and consented to him looking into that. I think really it's undisputed that the search was incident to a lawful arrest. When the person was searched - - when the rest of the meth was found, she was under arrest. That was Officer Todd's testimony, and also [the defendant's] testimony. And for those reasons, the Court finds that there was consent to search the container, and that the remainder of the search was a search incident to a lawful arrest. The motion is denied.

The defendant subsequently entered a best interest guilty plea to possession of methamphetamine and to possession of drug paraphernalia, reserving a certified question challenging the trial court's denial of the motion to suppress. The D.U.I charge was dismissed. At the sentencing hearing, the trial court found that no mitigating factors applied and stated, "[t]here's one enhancing factor, that is number two, previous history of criminal conduct, making reference to this prior misdemeanor possession charge." The trial court then sentenced the defendant to four years in the Community Corrections program after four months of service in the county jail and fined the

defendant $2,000 for the possession with intent to sell conviction. For the possession of drug paraphernalia conviction, the trial court imposed a concurrent sentence of eleven months and twenty-nine days with all but four months suspended. The defendant then filed notice of appeal.

## Analysis

Before addressing the merits of this appeal, we must first determine whether a properly reserved certified question is before us. Generally, an appeal lies from a guilty plea only when the defendant has properly reserved a certified question of law for appeal. See Tenn. R. Crim. P. 37(b). In order to properly certify a question, the defendant must ensure that: (a) the judgment, or document to which the judgment refers, contains a statement of the certified question of law; (b) the question of law is stated so as to clearly identify its scope and limits; (c) the judgment or document reflects the consent of the State and trial court; and (d) the judgment or document reflects that all parties agree that the issue is dispositive of the case. Id. In this case, the State does not contest the validity of the certified question, the judgment form references an order stating the certified question, the issue is dispositive, and the scope of the question is adequately defined. Thus, we conclude that a certified question is properly before us.

The defendant asserts that the trial court should have granted her motion to suppress the methamphetamine and drug paraphernalia pursuant to the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. The defendant, through her certified question, asks: (1) whether she was lawfully arrested; (2) whether the warrantless search was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement; and (3) whether, after being in the accident, she could have voluntarily consented to the search and various sobriety tests. By brief, the defendant presents the additional argument that the officer questioned her before reciting her Miranda rights. However, the defendant is limited to the certified question as reserved by the trial court, and consequently we will review only the validity of the search and arrest.

The factual findings of the trial court at a suppression hearing are presumed correct on appeal unless the evidence contained in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The trial court, as the trier of fact, is in the better position to assess the credibility of witnesses, assign weight and value to the evidence, and resolve any conflicts in the evidence. Id. In contrast, this Court conducts a *de novo* review of the trial court's conclusions of law. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant's contentions all stem from a warrantless search and arrest, which she believes violated her Fourth Amendment rights. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Article I, section 7 of the Tennessee Constitution is "identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968)). Warrantless searches are per se unreasonable under the Fourth Amendment and article I, section 7 of the Tennessee Constitution unless they fall within a few specifically established exceptions. See

Katz v. United States, 389 U.S. 347, 357 (1967); State v. Tyler, 598 S.W.2d 798, 801. (Tenn. Crim. App. 1980). Before any evidence obtained through a warrantless search becomes admissible, the State must establish by a preponderance of the evidence that the search falls within one of the narrowly defined exceptions to the warrant requirement. Yeargan, 958 S.W.2d at 629. Two such exceptions to the warrant requirement include a search incident to arrest and a search conducted pursuant to consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); see also New York v. Belton, 453 U.S. 454, 457 (1981) (discussing the parameters of a search incident to arrest). In order to justify a search incident to arrest, the searching officer must have probable cause to arrest the individual in question. See Belton, 453 U.S. at 457. Probable cause to arrest exists if the officer has "facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [individual in question] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

The defendant's certified question challenges her warrantless arrest. The defendant argues that she did not consent to the sobriety testing and that the physical trauma caused by the accident prevented her ability to perform on the tests. In responding to the defendant's 911 call, Deputy Todd was lawfully present at the scene of the accident. His suspicion that the defendant was intoxicated justified the brief detention of the defendant to confirm that suspicion. The defendant's consent was not a prerequisite to Deputy Todd's ability to perform sobriety testing. The defendant's admission of coherence to paramedics at the scene dispels her argument that she was incapable of performing the field sobriety testing. When the defendant failed various field sobriety tests, Deputy Todd's suspicion ripened into probable cause to arrest for D.U.I. Thus, we conclude that the arrest was lawful.

Once Deputy Todd placed the defendant under arrest, he effectuated a search of her purse, contact lens case, and vehicle. As a search incident to a lawful arrest, the defendant's consent to search was immaterial. At the suppression hearing, the trial court stated, "really its undisputed that the search was incident to a lawful arrest." We agree and consequently conclude that this appeal is without merit.

**Conclusion**

Based upon the record and the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE

-4-